George A. ROLFES, Plaintiff–Appellant,

v.

Ruth O'CONNOR, Defendant–Appellee.

No. 92CA0493.

Colorado Court of Appeals, Div. III.

Dec. 17, 1992.

Joseph A. Vento, Colorado Springs, for plaintiff-appellant.

Newman E. McAllister, Colorado Springs, for defendant-appellee.

Opinion by Judge CRISWELL.

Plaintiff, George A. Rolfes, commenced this litigation to obtain a court order requiring defendant, Ruth O'Connor, as the present holder of a promissory note secured by two deeds of trust executed by plaintiff, to release certain property from the encumbrance of one of those deeds of trust in accordance with that instrument's provisions for partial releases. He also sought an order setting aside the fore-closure proceedings that were completed during the pendency of the litigation. The trial court entered summary judgment, dismissing both of plaintiff's claims, and plaintiff appeals from that judgment. We affirm.

The facts are undisputed. Plaintiff's promissory note, in the original principal amount of $300,000, was executed and delivered to defendant's predecessor in interest in May 1985. The note provided that the principal would not bear any interest until February 1986 and that for the three months following that date only interest payments would be made. Thereafter, the note required quarterly payments of both principal and interest.

The note provided that it was to be secured by a deed of trust, which was to provide for partial releases. In addition, the note had an acceleration clause which provided that, in the case of a default in paying any installment that was not cured within 30 days, the entire principal and all accrued interest would, at the option of the holder, become due and payable without further notice.

Plaintiff executed and recorded two deeds of trust to secure the obligation represented by this promissory note, one encumbering property in Teller County and the other encumbering property in Park County. Only the Teller County deed of trust is directly involved in this litigation, although the existence of the Park County deed of trust has relevance to one of plaintiff's claims, as will be noted below.

The Teller County deed of trust contained a provision for partial releases reading as follows:

Partial Releases:

Upon payment of $5,172.00 per lot or $750.00 per acre for any portion of the 4 tracts described above the holder of this deed of trust shall release any lot and/or acreage requested by Maker. Maker shall be entitled to partial releases upon payment of principal pursuant to his quarterly payment schedule utilizing the above formula. If Maker requests a partial release and pays the amount re-

quired such payment shall be applied to the principal balance owing at that time.

Plaintiff made all payments called for by this note through March 21, 1990. Thereafter, however, no further payments were made by him. As a result, defendant commenced foreclosure procedures under the Teller County deed of trust on March 25, 1991, and a foreclosure sale was set for May 22, 1991.

On May 8, 1991, plaintiff's attorney sent a letter to defendant notifying her that he was going to make a tender under the partial release provisions of the deed of trust and describing the lots which he requested to be released upon such tender. On May 20, 1991—two days prior to the date set for the foreclosure sale—plaintiff tendered to defendant the sum of $55,860 and requested the release of specifically designated tracts encumbered by the Teller County deed of trust. Such sum included only the principal amounts called for by the formula described in the provision for partial releases. It did not include any sum for accrued and unpaid interest, either on the entire unpaid principal balance or on the amount of principal being tendered.

Defendant does not contest the validity of the tender, as a tender, but she refused that tender and refused to provide partial releases to plaintiff, claiming that, upon plaintiff's default in payment of the installments called for by the promissory note and the commencement of foreclosure proceedings, plaintiff's right to obtain partial releases terminated. Consequently, the foreclosure sale was held as scheduled, and defendant bid in at that sale the full amount of principal and accrued interest on the note then due and owing.

Defendant acknowledges that her purchase at the foreclosure sale under the Teller County deed of trust fully satisfied all obligations for which the Park County deed of trust stood as security. There has been no foreclosure upon the latter deed of trust, and defendant has offered to release that encumbrance, but plaintiff has refused such offer, presumably to assure that his legal position upon the issues presented here will not be compromised.

## I.

 Plaintiff first argues that, because the provisions for partial releases in the Teller County deed of trust were not expressly conditioned upon a lack of default by him, his failure to pay some four quarterly installments did not bar him from exercising his right to obtain partial releases upon a tender of the principal sums required by that provision. Under the circumstances disclosed by the record, we disagree.

Whether a provision for partial releases in a note or encumbrance is barred by a payor's default in the performance of the general obligations under those instruments is a question upon which the courts are in apparent disagreement. *See* Annot., *Construction of Provision in Real Estate Mortgage, Land Contract, or Other Security Instrument for Release of Separate Parcels of Land as Payments Are Made,* 41 A.L.R.3d 7 at 56–109 (1972).

Many courts have announced a seemingly broad rule that, unless otherwise specifically limited, a right to a partial release upon the payment of a specified sum is not dependent upon the absence of a default by the payor, so long as the requirements specified for a partial release are met. However, the courts announcing such a rule have done so in a variety of factual contexts, and as the author of the foregoing annotation has noted, it has been the particular language creating the right and the unique circumstances of the parties that have driven the results in these cases.

For example, one of the earliest and leading cases cited in support of such a broad rule is *Vawter v. Crafts,* 41 Minn. 14, 42 N.W. 483 (1889). In that case, the controlling document required the purchaser to subdivide the ground, which was done. After securing the release of a number of lots pursuant to the encumbrance, he sold two lots to a third party without obtaining their release. Later, because of the purchaser's default in payment, the mortgagee commenced foreclosure proceedings. The third-party purchaser of the two lots then

tendered to the mortgagee the principal amount called for by the encumbrance to obtain their release, together with a proportionate share of the accrued interest and costs of the foreclosure proceedings.

Because of the nature of the various provisions of the encumbering instrument, the Minnesota court held that the parties intended for individual lots to be sold to third parties. It concluded, therefore, that the provision for partial releases included an implied obligation to pay a pro rata portion of any interest that had accrued prior to the tender. In the face of such a tender, pursuant to which the holder of the note would receive as consideration for release of the lots all that he would have received absent a default, equity compelled a conveyance of the lots to the innocent third-party purchaser.

More modern opinions adopting the rule that the right to a partial release survives a general default also emphasize the consideration that, under the particular circumstances presented, the mortgagee would receive for the lands to be released all that he otherwise would have received. *See Harada v. Burns*, 50 Haw. 528, 588, 445 P.2d 376 (1968); *Sacramento Suburban Fruit Lands Co. v. Whaley*, 50 Cal.App. 125, 194 P. 1054 (1920).

In contrast to these decisions, however, some courts have said that, if the note contains an acceleration clause, similar to the one included in the promissory note here, once the entire note becomes payable under its terms, the right to partial releases is terminated. *Toole–Tietzen & Co. v. Colorado River Development Co.*, 38 F.2d 850 (S.D.Calif.1930).

Still other courts have looked to the various obligations assumed by the payor under other provisions of the note and the encumbrance and have held that a default in those other provisions will bar the right to obtain partial releases, if the payee will not receive for such releases that which he would have received had there been no default. For example, if the tender of principal only would deprive the payee of the pro rata portion of the accruing interest due on that principal, or the unpaid taxes

due on the land, or of other specified consideration, the courts have refused to recognize the right to partial releases after default. *See Ryan v. Rizzo*, 114 Conn. 467, 159 A. 272 (1932); *Reitzer v. Medlake Development Co.*, 27 S.W.2d 563 (Tex.Civ. App.1930).

In reaching this latter conclusion, these courts have concluded that the obligation to issue partial releases is impliedly conditional upon the payor's compliance with the general payment schedule, even in the absence of specific provision providing for such dependency. *See Toole–Tietzen & Co. v. Colorado River Development Co., supra.*

Here, defendant argues that, irrespective whether the provisions for partial releases makes their issuance dependent upon the payor's compliance with the other terms of the note, plaintiff is not entitled to any judicial relief. This is so, she says, because, if plaintiff seeks equity's aid to obtain a decree similar to a decree of specific performance, plaintiff must first do equity himself. She argues, therefore, that, because plaintiff has committed a serious breach of the obligations assumed by him under the promissory note and deed of trust and has not offered to make plaintiff whole with respect to the transaction, equity will not aid him. We agree.

■ A party seeking specific performance of a contract must not be guilty of the first substantial breach of that contract. *Scientific Packages, Inc. v. Gwinn*, 134 Colo. 233, 301 P.2d 719 (1956). *Cf. Coppom v. Humphreys*, 171 Colo. 410, 467 P.2d 816 (1970) (insubstantial breach).

Here, it is undisputed that plaintiff had not made any payments on the promissory note, which was secured by the deed of trust containing the provisions for partial releases which he sought to enforce, for more than a year prior to his tender. Further, when he did make his tender, he failed to offer to pay to defendant any unpaid interest on the sums tendered. Hence, he sought a substantial reduction in the security for the note without a concomitant reduction in the amount due thereunder.

Under these circumstances, we conclude, as a matter of law, that plaintiff failed to do equity, and he was, therefore, barred from obtaining equitable relief. *See Cripple Creek Trading & Mining Co. v. Stewart,* 100 Colo. 271, 67 P.2d 1032 (1937) (in order to have equity decree tax deed void, petitioner must reimburse purchaser for amount paid for deed).

In reaching this conclusion, we recognize that no rights of any third party have been implicated in this transaction. Hence, we do not decide the extent to which the result reached here would be the result obtained in other circumstances.

## II.

■ We also disagree with plaintiff's assertion that, because there were no foreclosure proceedings instituted under the Park County deed of trust, the foreclosure sale of the realty described in Teller County deed of trust must be voided.

Section 38–38–101(12), C.R.S. (1992 Cum. Supp.) authorizes the foreclosure sale of less than all of the property encumbered by a deed of trust if the parcel upon which foreclosure is sought is separately described in that deed of trust or in an amendment to it. If parcels are separately described, the beneficiary of that deed of trust may elect to foreclose upon any portion of the property specifically described therein. *See* § 38–38–101(1), C.R.S. (1992 Cum.Supp.). In that case, however, the beneficiary's notice of election and demand, as well as any notice of sale, must advise that the realty described constitutes only a portion of the entire property encumbered by the deed of trust. Section 38–38–101(13)(a), C.R.S. (1992 Cum.Supp.).

Plaintiff argues that, because the two deeds of trust executed by him both secured the same debt, they must be construed as constituting a single encumbrance. Hence, he argues, because neither defendant's election and demand nor the Teller County public trustee's notice advised that the scheduled sale would not affect the property described in the Park County deed of trust, the resulting sale

was void. Such a conclusion does not follow.

■ We recognize that, at least for some purposes, separate documents encumbering different properties as security for the same debt may be considered as creating a single encumbrance. *See Benn v. Trobert,* 76 Okla. 184, 184 P. 595 (1919) (venue in foreclosure action is properly laid in any county named in any of several encumbrances).

We conclude, however, that we need not decide whether this principle of unity should be applied for purposes of the statute here under consideration.

In *Travelers Insurance Co. v. Wellman,* 721 P.2d 685 (Colo.1986), the supreme court upheld a "coordinated" sale by two public trustees of realty lying in two adjoining counties, even though the full amount of the remaining indebtedness was bid in at each sale. In doing so, it emphasized that the intent of the creditor was clear, that the debtor suffered no prejudice, and that there had been no intervening rights of any third party involved in the transaction.

The same is true here. The defendant's intent to satisfy the entire obligation owed by plaintiff out of the property located in Teller County is unmistakable. She bid in the full balance due on the note at the foreclosure sale of this property, and she instituted no further foreclosure proceedings under the Park County deed of trust.

Likewise, there is no third party to be considered here. There was no competing bid made at the foreclosure sale.

Finally, plaintiff has suffered no prejudice from the procedure adopted. The notices issued by defendant and the public trustee specifically described the property that was to be subject to the sale, and plaintiff could not have been misled in this respect. Further, because defendant acknowledges that the sale of the Teller County property has fully satisfied the debt owing to her, plaintiff is entitled to receive a release of the Park County deed of trust.

We hold, therefore, that, under these circumstances, plaintiff is not entitled to have

the Teller County foreclosure sale set aside.

### III.

In light of our disposition of the foregoing issues, we need not address the other contentions made by plaintiff on this appeal.

Judgment affirmed.

ROTHENBERG and BRIGGS, JJ., concur.