Gwendolyn G. JOHNSON and Roger W. Johnson, Petitioners,

v.

James A. SMITH; Marshall Young; Jack J. Hull; Realty-In-The-Rockies, Inc., a Colorado corporation; C.V. Lindsey; Mattie Ethel Lindsey, individually; Mattie Ethel Lindsey as Executrix of the B.G. Lindsey Estate; the B.G. Lindsey Estate; P.E. Lindsey, as Executor of the Ruby Parker Lindsey Estate; the Ruby Parker Lindsey Estate; Central Bank of Colorado Springs, a Colorado Banking Institution; Gerald L. Montney; Connie Copenhaver, as Public Trustee of Teller County, Colorado; Central Telephone and Utilities Corporation, a Colorado corporation; Don Sayre; Charlotte White; Mary Armstrong; P.B.H., Inc., a Colorado corporation; A.C.R. Electronics, Inc., a Florida corporation; Rayford Investment, Company, a Louisiana corporation; Randel W. Case; and all unknown persons who may claim any interest in the subject matter of the action, Defendants,

and

C. Bryant Reber, Trustee, Respondent.

No. 82SC242.

Supreme Court of Colorado,
En Banc.

Jan. 23, 1984.

As Modified on Denial of Rehearing
Feb. 14, 1984.

Ware, Marroney & Cole, David E. Ware, Pueblo, for petitioners.

Newman E. McAllister, Colorado Springs, for respondent.

ERICKSON, Chief Justice.

In an action to quiet title to real property, the petitioners, Gwendolyn G. and Roger W. Johnson, assert that the Court of Appeals erred in reversing a trial court order which quieted title in the Johnsons (petitioners). *Johnson v. Smith*, 651 P.2d 422 (Colo.App.1982). We granted certiorari and now reverse the Court of Appeals and remand for consideration of the issues not addressed by the Court of Appeals.

### I.

In 1977, James A. Smith (Smith), G. Marshall Young, Jack J. Hull, and Realty-In-

The-Rockies, Inc. acquired title as tenants in common to certain real property, known as the "Lindsey property," located in Teller County, Colorado. In order to finance the purchase, Smith executed a promissory note for $75,000 and a deed of trust in favor of Central Bank of Colorado Springs (Central).

In the early part of 1978, Smith defaulted on the promissory note and Central commenced foreclosure proceedings on the property pursuant to the deed of trust. On May 10, 1978, a certificate of purchase was issued to Central by R.A. Hullett, public trustee for Teller County, Colorado. The certificate of purchase was subsequently assigned to Rayford Investment Company, Inc. (Rayford) in October 1978.

Prior to the running of the owner's redemption period, numerous judgment liens were obtained against Smith:

(1) On June 6, 1978, AVCO Financial Services of Colorado, Inc. (AVCO) recorded a transcript of two personal judgments obtained against Smith on April 14, 1978. AVCO filed its notice of intention to redeem, pursuant to section 38–39–103(2), C.R.S.1973 (1982 Repl.Vol. 16A), on October 12, 1978. These judgment liens were later assigned to petitioners on October 17, 1978.

(2) On November 1, 1978, Gwendolyn Johnson, one of the petitioners, recorded a transcript of a personal judgment obtained against Smith on October 25, 1978. Her notice of intention to redeem was filed on November 2, 1978.

(3) On November 2, 1978, Randle W. Case (Case) recorded a deed of trust executed by Smith for the benefit of Case to secure payment of an alleged note. Case filed his notice of intention to redeem on the same day.

(4) On November 13, 1978, C. Bryant Reber (Reber),[1] an attorney at law, recorded a transcript of a personal judgment obtained against Smith by A.C.R. Electronics, Inc. on March 24, 1978, and assigned to him on November 9, 1978.

On November 13, 1978, Reber filed his notice of intention to redeem with the public trustee, at which time the public trustee stated to Reber that Reber's notice was not timely because the period for notice had expired.[2] It is undisputed that the public trustee was in error and that Reber had until November 13, 1978, to file his notice of intention to redeem.[3]

On November 17, 1978, petitioners, as lienors on the two AVCO judgments and Gwendolyn Johnson's judgment, redeemed the Lindsey property pursuant to section 38–39–103(3), C.R.S.1973 (1982 Repl.Vol. 16A), and received the public trustee's certificate of redemption which was recorded the same day. Subsequently, on November 28, 1978, Case, as a junior lienor, redeemed pursuant to section 38–39–103(3) and received a certificate of redemption. Reber, however, made no tender to the public trustee of the requisite documents and redemption amount within the prescribed time period set forth in the statute.

After the public trustee refused to issue a public trustee's deed to petitioners, they brought suit on December 27, 1978, in the District Court of Teller County, Colorado, to quiet title to the real property. The trial court entered judgment for petitioners and found that a six-month statutory period

---

1. The record indicates that Reber was at all times acting as an agent for Rayford. Rayford was assigned the certificate of purchase after foreclosure sale. Reber, as the agent of Rayford, sought to obtain title through either the certificate of purchase or as a junior lien holder.

2. However, the trial court found specifically that:
 "The evidence as supplied by Reber's testimony was clear that the Public Trustee never refused a lienor's tender of redemption from Reber, and the Court would presume from what evidence may be gleaned from the deposition of the Public Trustee, that had a tender been made by Reber, the tender would have gone the way of all other tendered monies, that being into the Registry of the Court."

3. According to Hullett's deposition, Hullett believed, mistakenly, that the last valid date to file a notice of intention to redeem was November 10, 1978. Thus, in Hullett's view, Reber's attempt to file notice on November 13, 1978, was untimely.

was applicable and that therefore the owner's redemption period ran through November 13, 1978.[4] The trial court found also that Reber had lost his right to redeem by failing to comply with section 38–39–103(3). Ruling that no other proper redemption had occurred subsequent to petitioners' redemption,[5] the trial court quieted title in the petitioners and ordered the public trustee to issue them a public trustee's deed.

The Court of Appeals, however, reversed and ruled that Reber's "reliance on the public trustee's" erroneous statement that Reber had failed to file a timely notice of intention to redeem was sufficient to excuse Reber's noncompliance with the mandatory tender requirements of section 38–39–103(3). The Court of Appeals remanded the case to the trial court to determine the amount to be paid by Reber to redeem the property.

## II.

Petitioners assert that the Court of Appeals erred in ruling that Reber's reliance upon the public trustee's inaccurate statement pertaining to the filing deadline excused Reber's noncompliance with the tender requirements of section 38–39–103(3). In petitioners' view, the Court of Appeals erroneously substituted new factual findings for those of the trial court when it held that Reber's "reliance on the public trustee's statement" was sufficient to excuse Reber's noncompliance.[6] We agree.

 The right to redeem from an execution sale is a creature of statute. *Davis Manufacturing Supply Co. v. Coonskin Properties, Inc.*, 646 P.2d 940 (Colo.App. 1982). The right of redemption has long been recognized as a substantive right to be exercised in strict compliance with statutory terms. *Mollerup v. Storage Systems International*, 569 P.2d 1122 (Utah 1978). It is not a right derived from principles of equity, but depends entirely upon the provisions of the statute creating the right. *Mollerup v. Storage Systems International, supra.*

 In appropriate circumstances a court of equity may allow redemption after the statutory time period has expired. *Moreland v. Marwich, Ltd.*, 665 P.2d 613 (Colo.1983). However, a court is not justified in invoking its equity powers to set aside a sale or to extend a redemption period unless there have been circumstances such as fraud, deceit, or collusion by the purchaser or unless a holder of a right of redemption has been misled by the public trustee's erroneous information as to the applicable redemption period, *Davis Manufacturing & Supply Co. v. Coonskin Properties, Inc., supra*, and has acted in reliance on the erroneous statement. *Moreland v. Marwich, Ltd., supra; Arnold v. Gebhardt*, 43 Colo.App. 387, 604 P.2d 1192 (1979) (redemption period extended to remedy *reliance* on public trustee's erroneous advice that the period was six months, as permitted for agricultural real estate, rather than seventy-five days, as allowed for other real property). *See also Dolan v. Flett*, 41 Colo.App. 40, 582 P.2d 694 (1978) (where a lienor was advised that he had no redemption right and in reliance failed to tender the funds necessary to redeem).

Section 38–39–103 provides in pertinent part:

"(2) No lienor or encumbrancer is entitled to redeem unless, within the redemp-

---

**4.** The Court of Appeals affirmed on this issue and held that "since the trial court's findings were not refuted and are supported by the evidence, the court's determination that a six-month statutory redemption period applied will not be disturbed upon review."

**5.** The trial court found also that Case was not entitled to redeem because, in its view, he was unable to prove any indebtedness owed to him by Smith.

**6.** On appeal, Reber contends that he was not required to tender payment to Hullett because compliance was excused both by Hullett's erroneous statement and by Case's fraudulent claim. We need not address, however, Reber's latter contention because we granted certiorari only as to the narrow issue:

"Whether the Court of Appeals erred in ruling that the statement of public trustee excused Reber from tendering the funds for redemption in spite of the fact that the trial court found that the trustee's statements had no effect on Reber's decision not to tender the funds."

tion period provided for in section 38–39–102, he files a notice of his intention to redeem with the public trustee, sheriff, or other official making the sale and unless his lien appears by instruments duly recorded or filed as permitted by law. No lienor shall be entitled to redeem under this section unless his lien appears by an instrument so recorded or filed prior to the expiration of the period of redemption provided for in section 38–39–102. The calendar dates of the periods of redemption allowed the respective lienors shall be considered as being fixed at the time of the expiration of the period of redemption provided for in section 38–39–102, and such periods shall not be advanced according to the calendar by the fact that any prior lienor redeemed before his full period of redemption expired.

"(3) A *lienor* redeeming *shall pay* to the public trustee, sheriff, or other official making the sale the amount required to redeem and *shall produce* to such *official documents* evidencing his right to redeem, such as the original mortgage, trust deed, lien, or other document evidencing the original lien, together with the certificate of record endorsed thereon or a certified copy thereof, or the record thereof, and also the assignment thereof or the evidence of the assignment thereof, *together with* an affidavit of himself or his agent showing the amount then actually owing on such lien."

7. Reber did not pay the required redemption amount within the prescribed statutory period. In addition, Reber tendered neither the required documents evidencing his right to redeem nor the affidavit showing the amount due on the lien as required.

8. The trial court found:
"As to the claims of the Defendant, C. Bryant Reber, as Trustee and agent for Robert Rayford, William Ledbetter and Vince Gordon, (collectively referred to as Rayford), the Court finds from the evidence that Reber never intended to tender to the Public Trustee of Teller County, Colorado, the $170,000.00 that was wired to him by the Rayford interests. The evidence is clear that Reber, in making no tender of redemption, was acting on Rayford's instructions and that Rayford's decision

(Emphasis supplied.) The tender language contained in section 38–39–103(3) is mandatory and not directive. It specifies no exceptions to the limitation of time.

■ It is undisputed that Reber failed to comply with the mandatory tender requirements in section 38–39–103(3).[7] Since there is no evidence of fraud, deceit or collusion, Reber must show that his noncompliance with section 38–39–103(3) is excused because he was misled by the public trustee's erroneous statement as to the applicable redemption period and acted in reliance on that statement. *See Moreland v. Marwich, Ltd., supra.*

The trial court found that Reber's decision not to redeem within the prescribed period was based upon the high rate of interest prevailing at the time, the lienor's unwillingness to "tie up" a substantial sum of money for the duration of trial, the value of the property involved, and Reber's belief that the Case judgment lien was fraudulent.[8] The trial court found that the erroneous statement communicated by the public trustee to Reber had no effect on Reber's decision not to redeem, and stated: "The court finds that although R.A. Hullett, the Public Trustee of Teller County, Colorado, told Reber that his claim was too late, said statement by the Public Trustee was of *no effect.*" (Emphasis supplied.)

The Court of Appeals, in reversing the judgment of the trial court, relied heavily upon *Dolan v. Flett,* 41 Colo.App. 40, 582 P.2d 694 (1978). In the view of the Court

not to tender redemption and the $170,000.00 as a part thereof, to the Public Trustee was based foremost and primarily on economic reasons, although certainly a portion of the reasons for non-tender may have been based in part on Case's fraudulent claim for a lien valued at $70,000.00; however, the evidence clearly established the fact that many other influences entered into Rayford's decision not to tender a lienor's redemption to the Public Trustee. Some of those economic factors which resulted in Rayford's decision not to tender redemption established by the evidence were the high rate of interest at the time, Rayford did not wish to tie up the amount of money necessary to redeem for the duration of this trial, the value of the property, and many other economic reasons."

of Appeals, Reber "rel[ied]" to his detriment upon the public trustee's erroneous statement in failing to comply with the statutory tender requirements and was, therefore, excused under *Dolan v. Flett, supra,* which states that tender is unnecessary where it would serve no useful purpose.[9]

Factual findings of a trial court may not be disturbed on appeal unless they are unsupported by the record. *Gebhardt v. Gebhardt,* 198 Colo. 28, 595 P.2d 1048 (1979). In our view, the trial court's finding that the erroneous statement of the public trustee had no effect on Reber's decision to redeem is amply supported by the record. The Court of Appeals, therefore, erroneously substituted itself for the trial court as a finder of fact in finding that Reber relied on the public trustee's statement.

We, accordingly, reverse the judgment of the Court of Appeals and remand for consideration of the issues not addressed by the Court of Appeals.

---

9. Judge Coyte, in his dissent in *Johnson v. Smith, supra,* correctly notes that in *Dolan v. Flett, supra,* "the lienor was told that he had no redemptive rights, and *solely in reliance* upon that statement, he did not attempt to redeem." 651 P.2d at 425 (emphasis supplied).